THOMAS F. BRADY *v.* THE MAYOR
AND CITY COUNCIL OF
LAUREL, MARYLAND

[No. 5, September Term, 1978.]

*Decided October 11, 1978.*

---

24. Quecedo v. Montgomery County, 264 Md. 590, 594, 287 A. 2d 257, 259 (1972).

374

The cause was argued before GILBERT, C. J., and THOMPSON and LISS, JJ.

*C. Philip Nichols, Jr.,* with whom were *Nichols & Hurtt* on the brief, for appellant.

*Paul B. Rodbell,* with whom were *Alan R. Friedman* and *Meyers & Billingsley, P.A.* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

Recognizing that "[a] policeman's lot is not a happy one," [1] but that courts must deal with the law, not morals,[2] Judge Samuel W. H. Meloy, in the Circuit Court for Prince George's County, sustained, without leave to amend, the demurrer of the Mayor and City Council of Laurel, Maryland (Laurel) to the suit brought against them by Thomas F. Brady, a police officer for that City.

The facts of this case as pleaded, if true, cause Mr. Gilbert's observation about a policeman's lot to appear to be a gross understatement. Had that eminent playwright known of the matter now before us, he might well have opined that "the policeman's lot can be a particularly pathetic plight."

From the meager record supplied us, consisting principally of a declaration in tort, a motion raising preliminary objection, answer thereto, amended declaration, demurrer, and a transcript of Judge Meloy's reluctant, if not apologetic ruling, we learn that:

Brady was sued by "Ester Marie Bowen and Charles Leon Bowen as a result of the performance of his duties as a police officer for . . . Laurel. . . ." According to Brady's brief,

---

1. William Schwenck Gilbert (1836-1911), *Pirates of Penzance,* Act II (1879).

2. Mr. Justice Oliver Wendell Holmes, Jr. (1841-1935), phrased it, "[t]his is a court of law, young man, not a court of justice." Dr. Laurence J. Peter, *Peter's Quotations* (1977 ed.) pg. 277.

the Bowen's suit was "brought against Patrolman Brady by Ms. Ester M. Bowen [because of Brady's] . . . intentionally striking her in the face with his baton, thus breaking her nose." The actions upon which the suit was based "were in the scope and course of his employment and not done maliciously. . . ." Notwithstanding that, even after Laurel made an investigation and determinined that Brady was acting "within the scope and course of his employment and not in any way malicious or outside the scope . . . [thereof] as an employee and agent of . . . [Laurel]," that city refused to pay the cost of Brady's legal representation in the Bowens' claim against him. Brady successfully defended against the Bowen matter, and then he brought suit in tort against Laurel asserting that as a "proximate result of . . . [Laurel's] negligence," in failing to undertake the defense of the Bowen litigation he, Brady, sustained "severe emotional distress, discomfort, mental anguish" and he was "required to expend large sums of money for his legal defense."

Laurel filed a preliminary objection to Brady's declaration, averring that "as a governmental body" it was "immune from such [tort] action as a matter of law." The motion was granted after hearing, and Brady was allowed to amend his declaration.

Subsequently, Brady filed an amended declaration grounded in contract. He maintained that "in February 1973" he entered into a "written contract" with Laurel whereby he was required to "obey and support the Constitution of the United States and the Constitution and Laws of the State of Maryland and uphold the ordinances of . . . Laurel." Notwithstanding the "written contract" which in reality was an oath administered to Brady when he entered upon his duties as a peace officer, Laurel "failed to undertake . . . [his] defense in an action arising out of said employment contract. . . ." Brady incurred expenses for his successful defense of the Bowen suit of "more than $5,000, for which . . . [Laurel] has refused to reimburse him. . . ." Brady claimed "compensatory damages in the amount of . . . $250,000," thus

allowing a multiple of 50 times actual out-of-pocket expenses exclusive of costs.

The *ex contractu* declaration was met with a demurrer which was based upon the "written contract's" not being a contract at all but an oath which Brady swore and subscribed prior to "assuming his duties as a police officer for ... Laurel...." Judge Meloy, as we have seen, sustained the demurrer without leave to amend and this appeal followed.

In this Court, Brady puts two (2) questions to us, *videlicet:*

"1. Did the court err in its ruling that there was no binding contract between plaintiff and defendant which created a legal obligation on the defendant to defend plaintiff from an action brought against him, arising out of his actions in the scope and course of his employment, and not done maliciously, of which the defendant was aware?

2. Did the court err in ruling that the city was protected against a suit in tort brought by one of its law-enforcement officers arising out of his duties as a law-enforcement officer?"

For the reasons hereinafter explained, we shall confine our discussion to the first issue as it is the only one properly before us.

Brady asserts correctly that Md. Ann. Code art. 23A, § 1A has eliminated the defense of sovereign immunity in an action for breach of contract against a municipal corporation. Section 1A (a) provides:

"Unless otherwise specifically provided by the laws of Maryland, a municipal corporation, and every officer, department, agency, board, commission, or other unit of municipal government may not raise the defense of sovereign immunity in the courts of this State in an action in contract *based upon a written contract* executed on behalf of the municipal corporation, or its department, agency, board, commission, or unit by an official or employee acting within the scope of his authority." (Emphasis supplied.)

Section 1A (a) was enacted by Laws 1976, ch. 450, § 7 and became effective July 1, 1976. Section 6 of ch. 450 provides that the "[a]ct shall not apply to any action based on a contract entered into or executed prior to the effective date of this Act." [3]

Brady ignores the fact that section 1A (a) did not become effective until July 1, 1976, and has no application to contracts entered into or executed prior to that time. Brady's employment by Laurel commenced in February 1973. While we have not been furnished with the date of the episode between Brady and Ms. Bowen, it is safe to assume that it happened before July 1, 1976. We base our assumption upon the fact that the suit between Brady and the Bowens was tried in the Circuit Court for Prince George's County on July 8, 1976. It is beyond any doubt that events complained of by the Bowens, of necessity, occurred before July 1, 1976, because it would have been impossible to have filed suit, brought the matter to issue and had a trial within the space of eight (8) days.

We think it clear that Brady's reliance upon Md. Ann. Code art. 23A, § 1A (a) is completely misplaced as that statutory provision is, for the purposes of the instant case, non-existent. Moreover, the oath administered to Brady at the time he undertook the duties of a patrolman is not a "written contract" as that term is used in Md. Ann. Code art. 23A, § 1A (a). An oath is a solemn unilateral vow, made before a person authorized by law to administer oaths, to do or abstain from doing certain prescribed acts applicable to the office or duty being entered, the falsity of which is punishable by law by way of criminal sanctions. It is generally a condition prerequisite to the holding of public office or public trust and, in its broadest sense, is a signification that the party will well

---

3. Prior to Laws 1976, ch. 450, the General Assembly, by Laws 1973, ch. 287, § 2, effective July 1, 1973, had added section 1A to Article 23A, but section 1A was limited to the conferring of immunity from liability, both civil and criminal upon town councilmen or similar officials "for words spoken in debate at a town or Baltimore City Council meeting." Former art. 23A, § 1A was repealed by Laws 1973, ch. 2, § 2, 1st Sp. Sess. Former section 1A now appears, in substance, as Courts and Judicial Proceedings Article § 5-304.

and truly discharge the office he assumes. *See generally,* *Greenwald v. State,* 221 Md. 235, 155 A. 2d 894 (1960).

As often as not, the oath is unsigned, but that factor does not affect its validity unless the statute prescribing the oath requires it to be in writing and subscribed by the jurant. In any event, it is not a contract because only one party is bound thereby, and a contractual arrangement necessitates two or more parties supported by a lawful consideration.[4]

The oath in the instant case, not signed by Brady nor by Laurel, took the form of a question, namely:

> "Do you, Thomas Ford Brady, solemnly swear that you will obey and support the Constitution of the United States and the Constitution and Laws of the State of Maryland and uphold the ordinances of the City of Laurel, and that you will fairly, honestly and impartially administer the duties of the office of police officer to which you have been appointed, to the best of your knowledge and ability?"

It was subscribed by a notary public. No other signature appears thereon. Regardless of the pathos we might feel toward persons propelled into perilous predicaments by powers beyond their control, we are not free to make a contract for the parties which they did not see fit to make, nor may we imply a "written contract."

To bolster his theory of a contractual obligation between himself and Laurel, Brady refers us to the City Charter § 41. That section sets out the obligation of the mayor to appoint annually a police chief "and such other persons as may be necessary, from time to time, as policemen of said town, whose duties it shall be to preserve the peace and good order of the town. . . ." Additionally, the mayor and city council are permitted to command that policemen shall perform such other duties as the city fathers may direct. Reports of violations of the law are supposedly transmitted by the

---

4. Canaras v. Lift Truck Services, 272 Md. 337, 346, 322 A. 2d 866, 871 (1974), quoting Buffalo Pressed Steel Co. v. Kirwan, 138 Md. 60, 113 A. 628 (1921); Broaddus v. First National Bank, 161 Md. 116, 121, 155 A. 309, 311 (1931); 1 *Williston on Contracts* (3rd ed. 1957) § 18.

policemen to the city council at each regular monthly meeting together with a written statement, under oath, that the policemen "have each faithfully performed their duties required by [section 41 of the charter]...." The mayor possesses the authority to remove "[a]ny policeman failing to perform the duties imposed upon him, on evidence of the fact [*sic*] being produced to the Mayor" and to appoint another policeman as a replacement.

Brady perceives the charter provisions, when read together with the oath administered to Brady, as a "written contract." We have an entirely different view. Aggrieved persons are not at liberty to select various writings, read them together, and characterize them as a "written contract," particularly when no written contract was ever intended by the parties. We see the relationship between Brady and Laurel as no more than the ordinary employer-employee tie, upon which a little glaze has been added in the form of the oath. To the extent that any hiring by an employer of a person as his employee creates a contractual obligation between the parties, the employee normally is to perform an assigned task at a specified time and receive an agreed compensation for that service. Brady was under a contractual obligation to perform and Laurel was under a contractual obligation to pay for that performance.[5] The contractual obligation, however, was an oral one. The administering of the oath did not convert the oral employment contract into a "written contract" any more than placing frosting on bread changes it into cake. No matter how much frosting is added, the bread remains bread. Moreover, our review of the record reveals that this novel question was not raised before Judge Meloy and is not properly before us. Md. Rule 1085.

Somewhere on the road from the circuit court to this Court, Brady conceived of other reasons why Laurel should

---

5. The City Charter of Laurel § 41, indicates that policemen, such as Brady, who are hired by the city "shall be entitled, in addition to the compensation fixed by the Mayor and City Council, to the *fees allowed constables under the laws of this state, which shall be collected from the parties arrested and convicted.*" (Emphasis added.) But constables under the laws of this State are not entitled to any fees beyond the fixed compensation prescribed by the Maryland General Assembly. Md. Const. art. IV, § 41F.

reimburse him for his expenses incurred in defending himself. Despite the fact that his amended declaration was brought on the basis of a written contract, he now suggests that he be allowed to recover in the theory of principal and agent or of an implied contract. Neither of those two (2) matters was raised before Judge Meloy on the *ex contractu* action. They are not before us, and, hence, we do not consider them. Md. Rule 1085.

In an effort to snatch victory from ostensible defeat, Brady invokes a section of what has become known stylistically as "The Policeman's Bill of Rights," [6] Md. Ann. Code art. 27, §§ 727-734D. Specifically, Brady argues that section 728 (b) (11) authorizes his suit against Laurel in that it provides that "[a] statute may not abridge and a law-enforcement agency may not adopt any regulation which prohibits the right of a law-enforcement officer to bring suit arising out of his duties as a law-enforcement officer." Once again, the issue was not raised in the circuit court and is not before us. Md. Rule 1085. Even if it were properly before us for review, we would be hard pressed to construe that section as a panacea entitling Brady to sue Laurel. Section 728 (b) is patently directed to the rights of law-enforcement officers who are "under investigation or subject to interrogation by a law-enforcement agency, for any reason which could lead to disciplinary action, demotion or dismissal." All the subsections, including (11), quoted above, are concerned with that subject matter only. Section 728 (b) (11) may not be lifted out of section 728 (b) and considered apart from the balance of the statute as a separate statutory provision so as to elevate it to a status never intended and confer upon it a meaning wholly distinct from that given it by the Legislature. Brady's interpretation of section 728 (b) (11), while novel, is unavailing.

Finally, Brady seeks to have us hold that if his action *ex contractu* must fail, he should be allowed to pursue his claim on the theory of Laurel's negligently refusing to defend him

---

6. The law is titled "Law Enforcement Officers' Bill of Rights." Laws 1974, ch. 722, § 1.

in the Bowen matter. What Brady overlooks is that when he amended his suit from tort to contract, he did not preserve for our review the trial court's ruling on the motion raising preliminary objection. The choice he had to make at that time was admittedly difficult but, nevertheless, had to be made. He could have declined to amend, suffered the dismissal of the case and appealed the final judgment. He elected, however, not to pursue that course but to amend to a different cause of action, thereby waiving objection to the ruling on the motion raising preliminary objection. *Shapiro v. Sherwood,* 254 Md. 235, 254 A. 2d 357 (1969).

Furthermore, Brady has not shown to us, and we are aware of no "statute" or a "regulation" adopted by the Laurel police department which prohibits his right to bring a "suit arising out of his duties as a law-enforcement officer." Brady did, in fact, bring suit, but he was virtually pleaded out of court, not because of a statute or regulation but for the reasons herein before discussed.

*Judgment affirmed.*
*Costs to be paid by appellant.*